IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JULIE A. SU, Acting Secretary,<br>United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-1004-JWB |
| | ) | |
| LOS COCOS MEXICAN<br>    RESTAURANT, INC.;<br>SERGIO DELGADO;<br>LUIS ALFARO; and<br>JOSE ALVARO de LEON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

In this case, Plaintiff Secretary of Labor asserts wage and associated claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, against Defendant owners of three Wichita-area restaurants.  The matter presently comes before the court on the parties' cross-motions for summary judgment.  For the reasons set forth below, the court rules as follows.  Plaintiff's motion (Doc. 80) is **granted in part and denied in part**. The motion is granted with respect to the following issues: (1) the applicability of the FLSA to Defendants; (2) violations concerning payment of overtime to servers at an improper rate; (3) certain recordkeeping violations; (4) back pay damages for server overtime pay in the amount of $16,734.08; and (5) any offset defense; and judgment shall

be entered in Plaintiff's favor on those claims.   The motion is otherwise denied. Defendants' motion (Doc. 83) is **denied** in its entirety.

## I.   Background

Defendant Los Cocos Mexican Restaurant, Inc. owns three restaurants in Kansas, located in Wichita, Derby, and Andover.   Los Cocos is jointly owned by the three individual Defendants, each of whom primarily runs one restaurant.   The restaurants operate as a single employer (referred to herein as "Los Cocos").   In May 2019, the Wage and Hour Division (WHD) of the Department of Labor (DOL) opened an investigation into one Los Cocos location, and the investigation was subsequently expanded to include all three locations.   The investigation period extended back to mid-2017.   WHD determined that Defendants had committed wage and recordkeeping violations of the FLSA, and it assessed civil money penalties against Defendants.

After entering into a number of tolling agreements with Defendants, Plaintiff initiated the present action in January 2022.   Plaintiff alleges violations of the FLSA's minimum wage and overtime provisions with respect to Los Cocos's servers and cooks, as well as recordkeeping violations.   Plaintiff seeks relief in the form of compensatory back pay, liquidated damages, civil money penalties, and an injunction against future violations.

## II.   **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."  *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this,

3

sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   FLSA Applicability and Liability

Plaintiff first seeks summary judgment on her preliminary claim that Los Cocos is an "enterprise engaged in commerce" to which the FLSA's wage provisions apply. *See* 29 U.S.C. § 206(a), 207(a).  The Act defines such an enterprise as one that (i) sells goods that have been moved in interstate commerce and (ii) has annual sales over $500,000. *See* 29 U.S.C. § 203(b), (s)(1)(A).  The parties have stipulated that Los Cocos meets the sales threshold.  Plaintiff has also provided evidence that Los Cocos sells goods whose labels indicate that they were manufactured outside Kansas.  In response, Defendants suggest that labels may not be accurate, but they have not met their burden to provide evidence that Los Cocos does not in fact sell goods that have moved in interstate commerce.  Accordingly, the court concludes as a matter of law that Los Cocos is an "enterprise engaged in commerce" to which the FLSA's provisions apply, and Plaintiff's motion is granted accordingly.

Plaintiff also seeks summary judgment on her claim that Defendants are jointly and severally liable for any damages awarded in this action. *See* 29 U.S.C. § 203(d)

("employer" includes any person acting in the interest of the employer in relation to an employee). As noted above, the parties have stipulated that the individual Defendants managed the three locations.

Defendants have not responded to this argument. Nevertheless, under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*." (Emphasis added.) As the highlighted language indicates, the burden is on Plaintiff to show an entitlement to judgment in the first instance. Consequently, Defendants' failure to respond to this argument is not dispositive unless Plaintiff first meets that burden.

> If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate, for "[n]o defense to an insufficient showing is required."

*Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002) (citation omitted).

In this case, Plaintiff overstates her claim by alleging the FLSA imposes joint and several liability on individual Defendants. The court notes that the FLSA broadly defines "employer," and does so in a manner that is "more expansive than traditional common law definitions." *Garcia v. Palomino, Inc.*, 738 F. Supp. 2d 1171, 1176 (D. Kan. 2010). Moreover, cases interpreting the FLSA have indicated that more than one person may be an employer with respect to an employee. *See id.* at 1176–77; *see Solis v. La Familia Corp.*, No. 10-CV-2400-EFM-GLR, 2013 WL 589613, at *7–8 (D. Kan. Feb. 14, 2013).

5

Thus, Plaintiff has shown that the individual Defendants could be individually liable for their own violations of the FLSA.  But Plaintiff's argument for joint and several liability fails.  It is conclusory and does not direct this court to authority that demonstrates individual defendants encompassed by the broad definition of "employer" are necessarily jointly and severally liable for each defendant's FLSA violation.  Accordingly, the court denies Plaintiff's motion with respect to this issue.

### IV.   **FLSA Violations**

#### A.   _Servers – Validity of Tip Pool_

Both parties seek summary judgment with respect to the validity of Los Cocos's tip pool.  The FLSA requires payment of a minimum wage, set at a rate of $7.25 per hour for the relevant period.  _See_ 29 U.S.C. § 206(a)(1)(C).  Tipped employees, however, may be paid a lesser amount, with a "tip credit" taken by the employer to reach the minimum wage amount.  _See_ 29 U.S.C. § 203(m)(2)(A); _Romero v. Top-Tier Colorado LLC_, 849 F.3d 1281, 1283-84 (10th Cir. 2017).  Employers who pay less than the minimum wage because they take the tip credit must comply with the statutory requirements for that credit, even if the employees' tips would be sufficient by themselves to meet the minimum wage standard.  _See Romero_, 849 F.3d at 1285-86.  If an employer does not comply with the requirements, it may not take the credit at all, and it becomes liable to pay the usual minimum wage to the employee.  _See Richard v. Marriott Corp._, 549 F.2d 303, 305 (4th Cir. 1977); _Garcia v. Palomino, Inc._, 738 F. Supp. 2d 1171, 1178 & n.35 (D. Kan. 2010).

The parties have stipulated in this case that Defendants paid the servers at Los Cocos a wage of $2.30 per hour while taking a tip credit of $4.95 per hour, to satisfy the minimum wage rate of $7.25 per hour.  Plaintiff claims, however, that Defendants do not qualify for the tip credit and therefore violated section 206(a)'s minimum wage requirement because of their practice of collecting into a "tip pool" a portion of all servers' tips in the amount of two percent of sales generated during the servers' shifts. As a general rule, the FLSA does not allow an employer to keep for any purpose any tips received by employees.  *See* 29 U.S.C. § 203(m)(2)(B).  This rule is subject to an exception, however, as it does not prohibit "the pooling of tips among employees who customarily and regularly receive tips." *See id.* § 203(m)(2)(A); 29 C.F.R. § 531.54(b)(1) ("An employer does not violate section 3(m)(2)(B)'s prohibition against keeping tips if it requires employees to share tips with other employees who are eligible to receive tips."). An employer must distribute the collected tips to the other employees, however; it may not keep those tips to pay business expenses, including to defray the costs of other employee's wages.  *See, e.g.*, *Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, 2010 WL 4159391, at *4 (S.D.N.Y. Sept. 30, 2010); *Mackereth v. Kooma, Inc.*, 2015 WL 2337273, at *9 (E.D. Pa. May 14, 2015); *Rui v. Henderson Kitchen Inc.*, 2018 WL 4961622, at *6 (E.D. Pa. Oct. 12, 2018).  The employer bears the burden to show the validity of its tip pool, such that it may take the tip credit to satisfy its minimum wage obligation.  *See Garcia*, 738 F. Supp. 2d at 1177-78 & n. 34.

In this case, the parties dispute whether Defendants operated a valid tip pool.  It is undisputed that Defendants used the tips collected from servers to pay bussers, hosts, and

chip runners, who were paid at a rate of $7.50 or $7.75 per hour.  Plaintiff argues that Defendants' tip pool was not valid because Defendants used the collected tips for the business expense of paying the other employees' wages.  Plaintiff further argues that Defendants cannot simply have been distributing the collected tips to the other employees because those employees were paid a straight wage that did not vary in amount from one pay period to the next.  Defendants' argument, which is supported by their deposition testimony, is that the collected tips were in fact paid out to the other employees, but that they chipped in more money to make sure that the employees were paid minimum wage and above, to the level of their $7.50 or $7.75 rate – as they were required to do to meet the minimum wage obligation.  *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010) ("if the cash wage plus tips are not enough to meet the minimum wage, the employer must 'top up' the cash wage").  Plaintiff disputes that that is what actually occurred here, as Defendants' payroll records show payment of a straight wage rate, and thus do not support that the employees were actually paid an initial rate, paid collected tips, and then paid an additional "top-up" amount.

In an affidavit, Defendant Alfaro sets out the process that he claims was used to pay the other front-of-the-house employees.  He claims that those employees were paid at a rate of $2.13 per hour plus the contributed tips; those tips averaged $2.80 per hour for each employee; and thus, Defendants added an additional $2.57 or $2.82 per hour to get those employee's wages past the minimum wage to their rate of $7.50 or $7.75 per hour.  Plaintiff has not cited any authority suggesting that a tip pool is invalid if all collected tips are paid to other employees and then the employer adds additional compensation.

8

Plaintiff argues that the court should not consider the affidavit because the version originally submitted was not signed and dated and because it was not submitted in Mr. Alfaro's primary language of Spanish (and did not contain a certification from a translator). The court rejects these arguments for disregarding the affidavit, as Mr. Alfaro testified that he can communicate in English, and Defendants have submitted a corrected version of the affidavit that is signed and dated. The court agrees with Plaintiff, however, that it may not consider the affidavit to the extent that it contradicts the affiant's sworn deposition testimony. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002) (sham affidavit in conflict with deposition testimony may be disregarded).

Nevertheless, after reviewing the affidavit, Mr. Alfaro's deposition testimony, and the arguments of the parties based thereon, the court concludes that the validity of the tip pool is a factual question to be resolved at trial. The parties' motions for summary judgment on this issue are accordingly denied.

     B.    <u>Servers – Minimum Wage Violations</u>

Plaintiff also claims that Defendants violated their minimum wage obligations with respect to their servers in a different way. Plaintiff asserts that Defendants failed to pay certain servers minimum wage because while Defendants' payroll records would consistently show those servers having worked 80 hours in a pay period, other time records maintained by Defendant showed more hours worked, up to as many as 96 hours in a two-week pay period. In her summary judgment briefs, Plaintiff relies solely on that discrepancy to support the claim.

9

Defendants have testified, however, that they would adjust the hours submitted to the payroll company to account for breaks and instances when the servers failed to clock out, in order to submit the number of hours actually worked by the servers. Plaintiff has not addressed this testimony, which the court must credit in viewing the evidence in the light most favorable to Defendants.[1] Accordingly, the court denies Plaintiff's motion for summary judgment on this claim.

Similarly, the court denies Defendants' motion for summary judgment on this claim. The discrepancy with the time records and the fact that the servers' hours were consistently reported at the 80-hour limit after the adjustments, viewed in Plaintiff's favor, preclude any conclusion that Defendants committed no violation as a matter of law.

### C.   *Servers – Overtime Violations*

Plaintiff next asserts that Defendants violated their overtime pay obligations with respect to certain servers. Plaintiff bases this claim on the fact that the payroll records show payment of overtime to certain servers at their regular rate of $2.30 per hour or at an overtime rate of $3.45 per hour (1.5 times the $2.30 rate). Under the FLSA, an employee who works more than 40 hours in a week must be paid at least 1.5 times his or her regular rate. *See* 29 U.S.C. § 207(a)(1). In the case of a tipped employee for whom the employer takes a tip credit, the minimum overtime rate is $5.925 per hour, which

---

[1] Plaintiff essentially concedes in a footnote that, although she disputes the accuracy of the payroll records, those records do provide evidence to be viewed in the light most favorable to Defendants.

equals the initial $2.30 rate plus $3.625, which amount is half again the regular rate, which is defined to include the tip credit amount. *See* 29 C.F.R. § 531.60. Defendants do not dispute that $5.925 per hour represents the correct overtime rate that should have been paid to their servers. Nor have Defendants addressed this claim at all in their briefs.

Defendants' payroll records show that certain servers were not paid at the correct overtime rate. Accordingly, the court concludes as a matter of law that Defendants committed this violation, and it grants summary judgment to Plaintiff on this claim.[2]

### D. *Cooks – Overtime Violations*

Plaintiff next claims violations of section 207(a)'s overtime provisions with respect to Defendants' payment of their cooks. Specifically, Plaintiff claims that Defendants paid each cook a fixed amount (a fixed salary) every pay period, with no variation to account for the hours actually worked in that pay period, including by means of cash payments that were not included in the payroll records of the cook's wages. Thus, Plaintiff argues that in periods in which a cook worked overtime (over 80 hours in the pay period), Defendants should have paid the statutory premium because the regular rate used to determine overtime pay must be calculated from a salaried employee's salary based on a 40-hour work week.

Plaintiff relies on the fact that although cooks were scheduled for many hours, the payroll records usually included fewer hours, with the number of hours often consistent

---

[2] It does not appear that Defendants sought summary judgment on this claim, but to the extent they did, the court denies their motion, as violations have been established as a matter of law.

over numerous pay periods.  Plaintiff further relies on statements from cooks that they were always paid the same amount; the parties' stipulation that cooks were paid both by check and in cash; and the undisputed fact that cooks would not clock in and out at the beginning and end of their shifts.  Plaintiff argues that Defendants would therefore estimate (or fabricate) the number of hours that they reported for the cooks to the payroll company, which hours almost inevitably would total an even number of hours (for example, 96.0 hours instead of some fractional amount) that would not vary from pay period to pay period.  For their part, Defendants testified that they paid the cooks an hourly wage, including 1.5 times that wage for overtime hours, just as shown in the payroll records.  Defendants further testified that they paid cash to the cooks not for hours that they worked, but rather for hours that they did *not* work, so that the cooks would still receive as much money as if they had worked their usual complete schedule.

First, to the extent that Plaintiff claims that Defendants owe additional overtime because the cooks actually worked more hours than those reflected in the payroll records, the court concludes that a question of fact remains on the issue.  Defendants have submitted evidence that they reported to the payroll company the hours that the cooks actually worked each pay period, based on their observations of that work.  Plaintiff appears to rely not only on the cooks' scheduled hours, which exceeded the hours paid in the payroll records, but also on her investigator's estimate that the cooks actually worked an average of 113.5 hours per pay period, which estimate appears to have been based on the investigator's interviews with the employees.  As Defendants note, however, such statements from the employees represent inadmissible hearsay.  Plaintiff has not disputed

that the statements constitute hearsay; nor has Plaintiff argued that the statements are admissible under an exception to the hearsay rule.[3]   Instead, Plaintiff points to the statement in the investigator's declaration that he relied not only on employees' statements but also on statements by Defendants and various records.  The investigator did not explain in his declaration, however, how he reached his estimate of 113.5 hours worked, which estimate appears to be based primarily on hearsay from the cooks.  Accordingly, the court cannot consider the investigator's estimate, on which this claim depends.  Therefore, Plaintiff is not entitled to summary judgment on that basis.

Plaintiff also argues that Defendants violated the overtime provisions because they paid the cooks a fixed salary, which necessarily would require a different overtime rate than that actually used by Defendants.  As set out in the applicable regulations, an employer cannot simply pay a fixed salary that covers an expected number of hours in excess of 40 per week.  In such event, the fixed salary amount is divided by the number of covered hours (including those over 40) to yield a regular rate, and then the employer must pay an additional 0.5 times that regular rate for each hour worked over 40.  *See* 29 C.F.R. § 778.325; *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 655-56 (10th Cir. 1995) (citing 29 C.F.R. § 778.325).  Defendants have not addressed this rule or provided authority to argue any different rate.

In arguing that Defendants paid the cooks a fixed salary, Plaintiff relies on statements from the cooks that they were always paid the same amount, but again, such

---

[3]  Nor has Plaintiff argued that the investigator was entitled to rely on hearsay statements as an expert witness.

statements constitute inadmissible hearsay.  Defendants have submitted evidence that they in fact paid the cooks according to an hourly wage rate, and the payroll records themselves support that that was the arrangement.  The evidence then, viewed in the light most favorable to Defendants, defeats Plaintiff's claim of a fixed salary at this stage.

Undaunted, Plaintiff argues that even if Defendants did not pay the cooks a fixed salary, they nevertheless committed violations because they determined the cooks' overtime rate in the payroll records without including the additional (unreported) cash payments that they made to the cooks.  Defendants testified, however, that such payments were for time *not* worked.   In addition, Plaintiff has not addressed the possible application of 29 U.S.C. § 207(e)(2), which provides that the regular rate from which overtime is calculated does not include payments for occasional periods not worked.  *See id.*  Plaintiff's response to this testimony is only that no reasonable jury could believe that Defendants would pay for time not worked.  The court does not agree, however, that a jury could not reasonably credit Defendants' testimony that they paid additional sums to retain these employees.  Accordingly, the court denies Plaintiff's motion for summary judgment on this claim.   The court also denies Defendants' motion for summary judgment on this claim, as there is evidence, including the cash payments and the consistent number of hours reported across pay periods for the cooks, that supports the claim that Defendants paid a fixed salary to the cooks.

### E.     *Cooks – Minimum Wage Violations*

Plaintiff also claims that some cooks were not properly paid the minimum wage in violation of section 206(a) of the FLSA.  In support of this claim, Plaintiff's investigator

cites three examples in his declaration in which cooks were paid a certain amount according to the payroll records, but that payment would fall below the minimum rate of $7.25 per hour if those cooks actually worked the estimated average of 113.5 hours for those pay periods, rather than the lower number of hours set forth in those records. Again, however, the basis for that 113.5 figure is not explained and appears to be based on inadmissible hearsay. Accordingly, a question of fact remains, and the court denies Plaintiff's motion for summary judgment on this claim.

Viewed in the light most favorable to Plaintiff, however, the evidence that the recorded hours varied so substantially and consistently from the cooks' purported schedules does support Plaintiff's claim, and thus the court also denies Defendants' motion for summary judgment on this claim.

### F.     Recordkeeping Violations

Plaintiff also claims that Defendants violated the recordkeeping requirements of the FLSA, which requires employers to "make, keep, and preserve" records of employees' wages and hours. *See* 29 U.S.C. § 211(a). Plaintiff argues that Defendants committed these violations in five ways, as follows.

First, Plaintiff argues that Defendants did not keep accurate records of the tips collected from servers that Defendants purportedly redistributed to other front-of-the-house employees. The applicable regulations require an employer taking a tip credit to maintain records containing the amount of tips received by employees. *See* 29 C.F.R. § 516.28(a)(2). To support this claim, Plaintiff relies on Defendants' testimony that they did not keep a separate record specifically of the amount of the tips collected from

15

servers for the tip pool.  It is undisputed, however, that Defendants' policy was to collect two percent of sales from each server's shift, and Defendants note that those amounts are necessarily a product of figures maintained in Defendants' sales records.  Plaintiff has not addressed why such records would not be sufficient to document the two percent collected from the servers' tips.  Accordingly, the court concludes that a question of fact remains with respect to this recordkeeping claim.

Second, Plaintiff claims a violation relating to the total tips received by servers. Plaintiff argues that the payroll records, which purport to include the actual amounts of tips received and then paid out to servers, are not accurate, based on discrepancies between those records and other records produced by Defendants, and based on Defendants' admission that they sometimes rounded the amount of tips when reporting to the payroll company.  Defendants' only argument is that rounding small amounts of *time* is permitted, but they have not cited any basis for rounding the amounts of tips.  Nor have Defendants addressed the discrepancies between the sets of records (which discrepancies are generally greater than any *de minimis* difference that might be attributed to improper rounding).   Accordingly, the court agrees that Plaintiff has shown a recordkeeping violation concerning the tips as a matter of law, and it therefore grants Plaintiff summary judgment on this particular claim.

Third, Plaintiff argues that because Defendants failed to report the actual hours worked by employees to the payroll company, the payroll records are not accurate in that regard.  Plaintiff relies on the fact that Defendants would make adjustments when submitting hours to the payroll company.  Defendants testified, however, that such

adjustments were intended to make sure that they reported the actual hours worked by the employees.  Thus, because a question of fact remains concerning the accuracy of the records, a question of fact also remains concerning whether Defendants violated the recordkeeping requirements with respect to those records.

Plaintiff also relies on the admitted fact that Defendants rounded in reporting the hours to the payroll company.  Defendants argue that rounding in amounts less than seven or eight minutes is permitted.  Their testimony, however, reveals that the rounding was done as a matter of course to reach a non-fractional number of hours not just when the rounding was *de minimis*, but even in amounts up to 30 minutes.  Thus, the court concludes as a matter of law that Defendants committed recordkeeping violations by virtue of their rounding of hours worked, and Plaintiff is awarded summary judgment to that extent.

Fourth, Plaintiff asserts that Defendants committed a recordkeeping violation by failing to keep track of the cooks' specific start and stop times.  Defendants concede that the cooks did not clock in and out with the time clock when beginning and ending their shifts.  In arguing that Defendants were required to keep records of the start and stop times, Plaintiff cites 29 C.F.R. § 516.2(c). That regulation only provides an alternate method of recordkeeping if an employee works a fixed schedule, however; it does not require compliance with a time clock.  *See id.*  Defendants have submitted evidence that they submitted to the payroll company the cooks' actual hours worked, and Plaintiff has not explained why the payroll records would not be sufficient in that event (assuming the

records are accurate, on which issue a question of fact remains).  Accordingly, the court denies Plaintiff's motion as it relates to this specific recordkeeping claim.

Fifth, Plaintiff claims a violation based on her assertion that the payroll records are inaccurate because they do not include the cash payments admittedly made to cooks. Defendants' position, however, as discussed above, is that they made those payments for time *not* worked by the cooks.  Plaintiff has not shown that an employer is required to keep records of such payments (assuming, as the court must, that Defendants' version of events is true).  Accordingly, a fact question remains concerning this alleged violation, and the court denies Plaintiff's motion to that extent.

Finally, the court has concluded that Defendants committed recordkeeping violations as a matter of law.  Therefore, it denies Defendants' motion for summary judgment on Plaintiff's recordkeeping claim.

## V.    Statute of Limitations and Willfulness

The FLSA contains a general two-year statute of limitations for violations, but provides for a three-year limitations period for a cause of action arising out of a willful violation of the Act.  *See* 29 U.S.C. § 255(a).  "The standard for willful violations is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'"  *See Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Although the willfulness inquiry presents a mixed question of law and fact, fact issues predominate.  *See id.*

Plaintiff argues that Defendants committed willful violations as a matter of law. Plaintiff points to evidence that Defendants knew the minimum wage and overtime requirements imposed by the FLSA; that similar violations were found in a prior investigation of Los Cocos[4]; that Defendants paid employees by both check and cash; that Defendants seemingly created false payroll records to mask their underpayments; and that Defendants failed to consult with any experts concerning their payment methods.

The court notes, however, that Plaintiff has not yet prevailed on all of her claims of violations. Moreover, as noted above, the willfulness inquiry generally presents a question of fact, and the court concludes that that is the case here. The court concludes that this issue is more appropriately decided based on a weighing of the evidence presented at trial. Accordingly, the court denies both sides' motions with respect to the issue of willfulness.

Defendants also seem to take issue with the tolling agreements executed by the parties and the effect of those agreements. Defendants have not explained, however, how those agreements and any deficiency therein operate to place any alleged violations outside the limitations period. The court therefore denies Defendants' motion for summary judgment concerning the issue of the application of the statute of limitations.

---

[4] Defendants argue that Plaintiff may not rely on the 2009 investigation because Fed. R. Evid. 408 prohibits evidence of the resulting settlement and because that evidence falls outside the three-year limitations period. Plaintiff does not seek to rely on the settlement, however, but instead relies on the investigation to show that Defendants were aware of their FLSA obligations. Moreover, Defendants have not cited any authority to suggest that evidence from outside the limitations period cannot be used to support a claim of a violation falling within that period.

VI.   **Remedies**

    A.   *Back Pay*

Plaintiff seeks summary judgment with respect to the various remedies that she seeks, beginning with the claim for back pay to compensate Defendants' employees for the alleged minimum wage and overtime violations.   The court has denied Plaintiff summary judgment on her claims regarding paying minimum wage to servers, minimum wage to cooks, and overtime to cooks; therefore, it denies Plaintiff summary judgment on her claims for damages relating to those alleged violations.   The court also denies Defendants' motion for summary judgment on Plaintiff's claim for back pay damages, as Defendants have not shown that such damages may not awarded even if the underlying violations are shown.

The court thus addresses Plaintiff's claim for back pay to redress the violation on which Plaintiff has been awarded summary judgment.   This claim involves a violation with respect to certain servers' overtime rates.   Plaintiff seeks $16,734.08 in compensatory back pay.   Plaintiff calculated this figure based on a review of the payroll records for 43 servers paid at an incorrect overtime rate.   In each case, Plaintiff has taken the difference between the proper overtime rate and the incorrect rate used by Defendants and multiplied that difference by the number of hours worked as reflected in the payroll records.   Defendants have not offered any reason why that calculation is not correct. Accordingly, the court grants Plaintiff's motion with respect to this claim and awards Plaintiff judgment in the amount of $16,734.08.

    B.   *Offset Defense*

Defendants assert as a defense that any award of compensatory damages is subject to an offset. In support of this defense, Defendants cite the parties' stipulations that Defendants did not charge employees for certain meals or beverages or credit card fees. Defendants have not provided any basis for application of an offset, however, as they have failed to submit any evidence concerning the amounts of free items or discounts actually provided to their employees (nor is there evidence that they kept any records of such amounts). The court therefore grants Plaintiff's motion for summary judgment on this defense, and it denies Defendants' motion with respect to the same issue.

### C.    *Liquidated Damages*

Plaintiff seeks summary judgment on her claim for liquidated damages. The FLSA provides that an employer who violates the minimum wage provisions of section 206, the overtime provisions of section 207, or the tip credit provisions of section 203(m)(2)(B) shall be liable to employees not only for the amounts wrongfully withheld, but also for an additional equal amount as liquidated damages. *See* 29 U.S.C. § 216(b). If, however, the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," the court may in its discretion decide not to award some or all of the liquidated damages. *See* 29 U.S.C. § 260; *see also Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1540 (10th Cir. 1991) (citing 29 U.S.C. § 260).

Plaintiff insists that she is entitled to recover the full amount of liquidated damages as a matter of law. The court concludes, however, that the issues of Defendants'

good faith and reasonable belief are better adjudged after a trial, at which Defendants may address the bases for their actions.  The court cannot conclude on this record that Defendants cannot satisfy the section 260 standard as a matter of law, and the court therefore denies Plaintiff's motion with respect to this claim.

The court also rejects Defendants' additional arguments for summary judgment on the claim for liquidated damages.  Defendants first argue that non-compensatory damages may not be awarded to undocumented workers.  As noted in the pretrial order, however, the court has already prohibited Defendants' assertion of a defense requiring Plaintiff to show that Defendants' employees were "US Workers".  The pretrial order was entered by the presiding magistrate judge, and Defendants made no effort to contest the validity of the magistrate judge's ruling.  In addition, Defendants have failed to submit any evidence concerning the employees' immigration status.

The court also rejects Defendants' arguments that an award of liquidated damages would violate an old executive order prohibiting pre-litigation assessments of liquidated damages and would violate an agreement between the parties to stay proceedings. Defendants have provided no evidence of either a pre-litigation assessment or a stay agreement.  Accordingly, the court denies Defendants' motion for summary judgment as it relates to this claim.

### D.  *Civil Penalties*

Plaintiff also seeks summary judgment on her request for enforcement of the civil money penalties that her agency previously assessed against Defendants in the total amount of $424,629.  The FLSA provides that any person who repeatedly or willfully

violates section 206 or section 207 of the FLSA, or who violates section 203(m)(2)(B) of the FLSA, "shall be subject to a civil penalty not to exceed $1,100 for each such violation." *See* 29 U.S.C. § 216(e)(2).

Plaintiff first argues that Defendants are precluded from challenging the enforcement of the assessed civil money penalties ("CMPs") because they failed to exhaust their administrative remedies by filing an administrative agency appeal. It is undisputed that Defendants failed to file exceptions to the CMPs assessed by the agency, and Plaintiff argues that those CMPs therefore are not subject to judicial review in this case.

The court previously addressed this argument in the memorandum and order by which it denied Plaintiff's motion for judgment on the pleadings on this claim. *See United States Dept. of Labor v. Los Cocos Mexican Restaurant, Inc.*, 2022 WL 16571180, at *2–4 (D. Kan. Nov. 1, 2022). The court concluded in that opinion that Plaintiff had not shown judicial review of the CMPs was foreclosed. *See id.* at *3-4. The court noted that section 702 of the Administrative Procedures Act (APA) generally provides an entitlement to judicial review of an agency determination, and it concluded that the fact that section 216(e) of the FLSA made the CMPs "final" did not mean that there could be no review under the APA (as finality is a requirement for such review). *See id.* The court further concluded that Plaintiff had not shown how section 580.5, an agency regulation, could overcome the APA's statutory right of review. *See id.* at *4.

In moving for summary judgment, Plaintiff has now provided the supporting authority that she failed to cite in her previous motion. Section 704 of the APA provides

that an agency ruling may be considered final for purposes of seeking judicial review whether or not the aggrieved party has appealed the decision within the agency, "unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative."[5]  5 U.S.C. § 704.  In *Darby v. Cisneros*, 509 U.S. 137 (1993), the Supreme Court held that "Congress effectively codified the doctrine of exhaustion of administrative remedies" in section 704 of the APA.  *See id.* at 153.  The Court further held that "where the APA applies, an appeal to superior agency authority is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review."  *See id.* at 154 (emphasis in original, internal quotation omitted).  In this case, there are such agency rules, as 29 C.F.R. § 580.5 requires an appeal before judicial review and 29 C.F.R. § 280.6(a) makes the Secretary's action inoperative pending resolution of that appeal.  This new authority cited by Plaintiff thus appears to confirm

---

[5] The statute specifically provides as follows:

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C.A. § 704.  This rather byzantine language is not a model of clarity.  The court essentially had to diagram the sentence to figure out what it meant.  Having done so, it becomes apparent that, under the conditions set forth in the statute, exhaustion may be required by agency rule.  And, in any event, the Supreme Court so held in *Darby*.

that a failure to comply with the regulation's exhaustion requirement could preclude judicial review under the APA.

Nevertheless, the court is not persuaded to grant summary enforcement on the CMPs.  While Plaintiff has identified a statutory basis for requiring exhaustion within the agency prior to seeking judicial review, that still leaves unanswered the question of whether and to what extent Congress may constitutionally divest the courts of the judicial power to decide a case or controversy like this one and transfer that power to an administrative agency to be the judge of its own case, and nothing in *Darby* addresses that question either.  Nevertheless, aside from quoting this court's own language from the prior order, Defendants' do not address that issue.  Instead, Defendants attack the problem from the related, but distinct, position that the Seventh Amendment entitles them to a jury trial on Plaintiff's effort to impose CMPs.  Since that is the theory on which Defendants have decided to proceed, the court will forego further analysis of the separation of powers issue.

In the court's prior denial of Plaintiff's motion for judgment on the pleadings, there was no reason to address Defendant's Seventh Amendment argument for a right to a jury trial on the facts regarding civil penalties because Plaintiff had not shown judicial review of the CMPs was foreclosed.  *See Los Cocos Mexican Restaurant, Inc.*, 2022 WL 16571180, at *4.  Plaintiff, having now identified authority that may preclude judicial review of the agency's unilateral imposition of CMPs, the court now has reason to consider Defendants' Seventh Amendment argument that a jury must determine Defendants' liability for the CMPs in the first instance.  (Doc. 33 at 3.)

Under the Seventh Amendment, "(i)n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII.  Our constitutional right to a jury trial according to Thomas Jefferson is "'the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution.'"  *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 451 (5th Cir. 2022), *cert. granted,* 143 S. Ct. 2688 (2023) (citing Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), in The Papers of Thomas Jefferson 267 (Julian P. Boyd ed., 1958)).  And as Justice Rehnquist noted in his dissent in *Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322 (1979), it is easy to forget after more than 200 years since the founding that the colonists held the deprivation of jury trials as a leading grievance in their decision to break from England.  *See id.* at 340 (Rehnquist, J., dissenting).  Yet the right to a jury trial is fundamental to our constitutional system of checks and balances, and it will continue to stand as a bulwark to curb arbitrariness and the abuse of government power.

With these principles as a backdrop, it is not surprising the Supreme Court has asserted: "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).  And as discussed in this court's order denying Plaintiff's motion for judgment on the pleadings, Plaintiff has attempted to curtail Defendants' access to a jury by exercising both executive and judicial power over the civil penalty determination.  *See Los Cocos Mexican Restaurant, Inc.*, 2022 WL 16571180, at *2–4.

In accordance with the Court's mandate in *Dimick*, this court reviewed case law on Congress' authority to assign adjudication to agencies, and in that process, exclude juries as fact finders. The court's determination is that although Congress may, in certain circumstances, assign adjudication to an agency without running afoul of the Seventh Amendment, *see Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 455, (1977), Congress cannot assign adjudication to an agency and exclude juries for "actions that are analogous to '[s]uits at common law.'" *Tull v. United States*, 481 U.S. 412, 417 (1987). Put differently, Congress is permitted to exclude juries when a case involves "public rights," but it cannot do so with cases involving "private rights." *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014). Thus, whether Plaintiff may prevail as prosecutor, judge, and jury in this case depends on the nature of the claim; namely, does imposition and recovery of CMPs for alleged violations of sections 206, 207, and 203(m)(2)(B) involve a public or private right?

To determine if the claim involves a public or private right, courts apply a two-part framework. First, "a court must determine whether an action's claims arise 'at common law' under the Seventh Amendment." *Jarkesy*, 34 F.4th at 453 (citing *Tull v. United States*, 481 U.S. 417 (1987). Second, even "if the action involves common-law claims, a court must determine whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." *Id.* (citing *Granfinanciera, S.A. v Nordberg*, 492 U.S. 33, 54 (1989); *Atlas Roofing*, 430 U.S. at 455). Regarding part two of the framework: a court should consider "(1) whether 'Congress 'creat[ed] a new cause of action, and remedies therefor, unknown to the

27

common law,' because traditional rights and remedies were inadequate to cope with a manifest public problem,"    *Id.* (quoting *Granfinanciera*, 492 U.S. at 60); and "(2) whether jury trials would 'go far to dismantle the statutory scheme' or 'impede swift resolution' of the claims created by statute,"  *Id.* (quoting *Atlas Roofing*, 430 U.S. at 454 n.11 (first quotation)) (quoting *Granfinanciera*, 492 U.S. at 35 (second quotation)).

Here, Plaintiff seeks to punish Defendants through the imposition of civil penalties for Defendants' alleged willful and repeated violations of sections 206, 207, as well as violations of section 203(m)(2)(B) of the FLSA.   (Doc. 80)   Thus, whether Defendants are entitled to a jury on this matter first depends on if Plaintiff's pursuit of CMPs involves a private right that arises under common law.   In *Tull*, the Supreme Court analyzed the history of civil penalties.  The Court determined that "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law."  481 U.S. at 422.   A civil penalty, according to the Court, is a remedy that punishes "culpable individuals" and "were issued by courts of law."   *Id.*   Thus, historically, when the government pursued actions to recover civil penalties, a jury trial was required. *See id.* at 418–419.  Because Plaintiff seeks civil penalties from Defendants, the first part of the analytical framework is satisfied.

As to part two of the framework, the bases for Plaintiff's civil penalties against Defendants are common law breach of contract claims.  Plaintiff's cause of action is that Defendants withheld portions of their employees' wages and tips in violation of sections 206, 207, and 203(m)(2)(B) of the FLSA.  (Doc. 80.)  The underlying issue is unlawful withholding of wages, and the right to sue an employer for nonpayment of wages under a

breach of contract theory exists at common law.  *See Lipsitt v. Plaud*, 466 Mass. 240, 247–48 (2013) (stating that an employee's right to sue for breach of contract to collect "nonpayment of wages is so long standing and fundamental that it requires no citation").

Additionally, a jury trial on the issue of CMPs would not dismantle the FLSA's statutory scheme or impede a swift resolution to the case.  The Fifth Circuit Court of Appeals in *Jarkesy* addressed this factor by reviewing the statute at issue to determine in which forums agencies could bring civil penalties claims.  34 F.4th at 455.  The court concluded that the statutory scheme would not be dismantled because it allowed the agency to bring the action "in-house or in Article III courts."  *Id.*  Section 216(c) of the FLSA permits the Department of Labor to bring suits to recover unpaid wages and liquidated damages under sections 206, 207, and 203(m)(2)(B) in Article III courts.  § 216(c).  Additionally, section 216(e) authorizes CMPs to be recovered administratively through "deduct[ion] from any sums owing by the United States to the person charged," *id.* § (e)(3)(A); "in a civil action brought by the Secretary in any court of competent jurisdiction," *id.* § (e)(3)(B); or, as here, "ordered by the court, in an action brought for . . . a repeated or willful violation of section 215(a)(2) of this title."  *Id.* § (e)(3)(C).  Hence, because the FLSA explicitly allows Plaintiff to bring her claims in Article III courts, it seems unlikely that requiring a jury trial in this instance would dismantle the FLSA's statutory scheme.  And while section 216(e)(4) speaks in terms of "[a]ny administrative determination by the Secretary of *the amount* of any penalty under this subsection," it says nothing about the agency's authority to determine liability for any CMPs in the first instance. (Emphasis added.)  Finally, the court concludes it is also unlikely that requiring

a jury to resolve the claim for CMPs would impede the swift resolution of the lawsuit given that a jury trial is required to assess Plaintiff's claims that were not resolved here at the summary judgement stage.

Accordingly, Defendants have a right to allow a jury to determine whether CMPs are appropriate in this case, and Plaintiff will not be the sole arbiter of that question. Instead, a jury will determine Defendants' liability for the CMPs, and therefore, Plaintiff's motion for summary judgement on their CMPs claim is denied.

> E.   *Injunction*

Finally, Plaintiff seeks summary judgment on her claim for an injunction against future FLSA violations by Defendants.   *See* 29 U.S.C. § 217 (district courts have jurisdiction, for cause shown, to restrain violations).   Plaintiff argues that Defendants have not remedied all of the asserted violations and that they cannot be trusted to comply with the FLSA in the future.   Defendants also seek summary judgment on this claim, based on their insistence that they have made some changes as requested by Plaintiff and that an injunction is unnecessary.

The court denies both sides' motions as they relate to this claim.   At this summary judgment stage, the court has granted only some of the relief requested by Plaintiff, and questions of fact remain with respect to the issues of willfulness and good faith.   Plaintiff has not disputed that Defendants have taken some remedial measures.   The court therefore defers any discretionary decision on the need for an injunction and an injunction's potential scope until after the evidence has been presented at trial.

IT IS THEREFORE ORDERED BY THE COURT THAT Plaintiff's motion for summary judgment (Doc. 80) is hereby **granted in part and denied in part**, as set forth herein, and judgment shall be entered in favor of Plaintiff on particular issues and claims accordingly.

IT IS FURTHER ORDERED BY THE COURT THAT Defendants' motion for summary judgment (Doc. 83) is hereby **denied**.

IT IS SO ORDERED.

Dated this 17th day of November, 2023, in Wichita, Kansas.

    __s/ John W. Broomes_____
    JOHN W. BROOMES
    UNITED STATES DISTRICT JUDGE